**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

YOMAIRA VALLE,

      Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social
Security,

      Defendant.

No. 18-cv-11901-RGS

**REPORT AND RECOMMENDATION ON THE PLAINTIFF'S MOTION**
**TO REVERSE AND THE COMMISSIONER'S MOTION TO AFFIRM**

CABELL, U.S.M.J.

## I.  INTRODUCTION

Plaintiff Yomaira Valle seeks an order reversing a decision of the Acting Commissioner (the Commissioner) of the Social Security Administration (SSA) denying her application for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) based on mental and physical disabilities. (D. 16).  The Commissioner in turn seeks an order affirming her decision.  (D. 19).  The motions have been referred to this court for a Report and Recommendation.  For the reasons stated below, I recommend that the plaintiff's motion to reverse be <u>denied</u> and that the Commissioner's motion to affirm be <u>granted</u>.

## II.   PROCEDURAL HISTORY

The plaintiff applied for DIB and SSI on March 28, 2016, alleging a disability beginning on December 23, 2015.   (SSA Administrative Record of the proceedings, pp. 275, 277 (R. __)). The SSA denied the application twice, first on September 23, 2016, and then again on January 17, 2017, following Valle's request for reconsideration.   (R. 140, 173).   On October 19, 2017, an administrative law judge (ALJ) convened a hearing and subsequently found on November 28, 2017 that Valle was not disabled within the meaning of the Social Security Act (Act).   (R. 31).   On July 8, 2018, the Appeals Council denied Valle's request for review of the ALJ's decision, making that decision the final decision for purposes of this appeal.   (R. 2).

## III. FACTS

### A. Plaintiff's Background

Valle is Puerto Rican and speaks primarily Spanish, although she can read and speak some English.   She completed 11th grade and previously worked as a cashier, housekeeper, home health aide, sales attendant and telephone customer service representative. Valle was 40 years and 4 months at the date of her alleged onset of disability (December 23, 2015). Valle initially alleged several physical and mental health-related disabilities, including depression and anxiety, back pain and sciatica, migraines, carpal tunnel syndrome, and chronic obstructive pulmonary disease, and

later included significant right knee pain.  (R. 34, 59-72, 110).
Of pertinence here, Valle argues that her knee-related impairments
and her mental health-related impairments were severe enough to
warrant a finding of disability.

### B. **Relevant Medical Evidence**

#### 1. Knee-Related Evidence

With respect to her knee, Valle's family physician, Remya
Tharackal Ravindran, M.D., indicated in a September 6, 2016 report
that Valle said she began experiencing severe pain in her right
knee after receiving an injection for lumbar stenosis.  (R. 344).
An x-ray of the knee was normal, but an MRI revealed an "oblique
horizontal tear posterior horn of right medial meniscus."  (R.
378, 384).

In February 2017, Valle saw Anitha Sadasivan Dasari, M.D., to
treat her pain with oxycodone and gabapentin.  (R. 1360).  Dr.
Dasari's records also reflect that Valle suffered from an "acute
medial meniscal tear," and that she had knee surgery performed by
a Dr. Georges Almacari on February 7, 2017, but the records do not
contain any reports or information on the knee surgery from Dr.
Almacari himself.  (R. 1354-55).

On May 9, 2017, Dr. Dasari observed that Valle's right knee
was still tender and that she was wearing a knee brace.  (R. 1346).
In June 2017, Valle began physical therapy for her knee (R. 1336),
but after her initial consultation, she attended only two therapy

appointments.  (R. 1388).   In August 2017, she reported that she planned to see an orthopedist for a second opinion.  (R. 1337).

### 2. Mental Health-Related Evidence

With respect to her mental health impairments, Valle's psychiatrist, Mary Barkalow, M.D., completed a mental Residual Functional Capacity (RFC) questionnaire in September 2016.  (R. 755).   Dr. Barkalow indicated that Valle had difficulty concentrating as she had recurrent and intrusive recollections of trauma causing marked distress.   Dr. Barkalow also opined that Valle could not meet competitive standards for sustaining a routine without special supervision, perform at a consistent pace without an unreasonable number and length of breaks, or deal with work stress.

Valle was also examined by a state psychological consultant in connection with her claim for benefits based on depression and anxiety.   In September 2016 licensed psychologist Edward Powers, Ph.D., performed a psychodiagnostics interview at the request of Massachusetts Disability Determinations Services.   (R. 751-53). Dr. Powers found Valle to be adequately groomed, attentive, and responsive, but she did appear to be in some emotional distress. (R. 752).  That being said, Dr. Powers also found Valle's attention and concentration to be unimpaired, and she showed no evidence of psychosis, impulsivity, or memory problems.  (Id.).

Still, Dr. Powers found that Valle "presented as someone

unwell from multiple perspectives and in need of multifaceted healthcare services." (R. 753). He diagnosed Valle with major depressive disorder of moderate severity, PTSD stemming from childhood sexual abuse, and generalized anxiety disorder.

Also, in September 2016, psychologist Michelle Imber, Ph.D., reviewed Valle's records in connection with a mental RFC assessment. (R. 121-23). Dr. Imber found Valle had "moderate limitations" with respect to her ability to:

> carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or close proximity to others without being distracted; complete a normal workday and work week without interruptions from psychological symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting social extremes; and respond appropriately to changes in her work setting. (Id.).

Based on these findings, Dr. Imber concluded that Valle could: understand and remember simple instructions; could concentrate and focus on simple tasks within the limits of physical discomfort for 2/8/40,[1] with occasional interruption for troublesome and intrusive memories of past trauma; could engage in routine social interaction in a low-conflict setting; and could adapt to simple changes. (Id).

---

[1] The ALJ's questioning of the vocational expert indicates that this is shorthand for an ability to work in two-hour increments over an eight-hour day and a 40-hour week. (R. 101).

In January 2017 state medical consultant Jane Metcalf, Ph.D., reviewed Valle's records and confirmed Dr. Imber's findings in a second RFC assessment, noting that Valle continued to struggle with mild to moderate anxiety and depression varying with her level of pain. (R. 156-57).

### 3. Evidence from other Records

Finally, two additional state medical consultants reviewed Valle's records. In September 2016 Wayne Draper, M.D., found her back issues to be primary and severe but also determined that Valle could stand or sit for six hours in an eight-hour workday, could "occasionally" climb stairs or ramps, bend at the waist, kneel, crouch, and crawl. (R. 118-121). In January 2017, Jane McInerny, M.D., reached the same findings. (R. 151-54).

### 4. Evidence from the Administrative Hearing

The ALJ convened an administrative hearing on October 19, 2017. Valle testified at the hearing regarding both physical and mental limitations.

With respect to physical limitations, she testified regarding her back, her hands and her knee. Regarding her back, she testified that she worked for T.J. Maxx in customer service until she began experiencing low back pain that caused her to resign. She managed the low back pain with epidural injections and oxycodone but the injections became ineffective and her pain was a seven to eight. Recently, she had not felt able to do regular

household chores and had spent more time in bed because of her back. (R. 73-74, 84-85, 90-91). With respect to her hands, she testified that she had difficulty handling small objects and writing which, she understood, was due to arthritis. She previously had surgery on her right thumb for carpal tunnel syndrome but was still experiencing pain. (R. 89-90). Regarding her right knee, Valle testified that she had a problem with her ligament for which she had undergone surgery, and she still had pain despite the surgery, physical therapy and injections. (R. 91). Valle estimated that she could stand only 20 minutes at a time and sit for 30-45 minutes at a time. (R. 87). However, she also testified that she could walk for about 10 minutes at one time and that her medication relieved her pain by about 80 percent. (R. 88).

With respect to her mental health, Valle testified that depression and anxiety affected her ability to interact with others and leave the house. (R. 95-97). However, she also testified that she flew unaccompanied to Puerto Rico in January 2016 and went back with a cousin in June 2016 to see her mother. (R. 76-79). She also traveled by car as a passenger from the Boston area to Buffalo, New York, in August 2017 to see her sister. (R. 80-81).

The ALJ also took testimony from a vocational expert. The ALJ asked the vocational expert if Valle could perform any work

assuming she could not withstand concentrated exposure to unprotected heights or extremes in hot and cold temperatures, wetness, humidity, and pulmonary irritants, but assuming she had the following capabilities for a person of her age, education, and background:

> reading and understanding English, though difficulty with more than simple conversations or text; lifting 20 pounds occasionally and 10 pounds frequently; sitting, standing, and/or walking for six hours out of an eight-hour workday; occasionally climbing stairs and ramps, balancing, stooping, crouching, kneeling, or crawling; occasionally using the right upper extremity for gross and fine manipulation and for pushing and pulling; understanding and carrying out instructions consistent with an SPV of 2; maintaining concentration, persistence, and pace in two-hour increments over an eight-hour day and a 40-hour week; and relating to co-workers, supervisors, and the public on a superficial, interactional basis.

(R. 100-01). The expert responded that Valle could not perform any of her past work within the parameters the ALJ designated, but she could work as either an usher or a counter clerk for photo processing. (R. 101).

The ALJ then asked the expert to assume a second set of limitations based on the September 2016 reports from Dr. Ravindran and Dr. Barkalow, including:

> an ability to: lift and carry less than 10 pounds occasionally and lift less than 10 pounds frequently; sit for less than six hours out of an eight-hour workday; stand or walk for less than two hours out of an eight-hour workday; occasionally climb stairs, ramps, ladders, ropes and scaffolds; occasionally stoop; frequently kneel, crouch, and crawl; occasionally handle items with the right hand and no

limitation on fingering, feeling, or reaching; withstand environmental factors; but no ability to: meet competitive standards in sustaining an ordinary routine without special supervision; perform at a consistent pace without an unreasonable number and length of rest periods; or deal with normal work stress.

(R. 102-03). Hayward replied that a person with this set of limitations would not be able to perform any competitive work. (R. 103).

## IV. THE ALJ'S FINDINGS

On November 28, 2018, the ALJ found that Valle was not disabled within the meaning of the Social Security Act. (R. 31). In reaching this determination, the ALJ applied the mandated five-step review established by the Social Security Administration. 20 C.F.R. §§ 404.1520(a), 416.920(a).

Step one considers whether the plaintiff is engaged in substantial gainful activity (SGA), because a claimant who is so engaged is not disabled. 20 C.F.R. § 404.1520(b). SGA is defined as work activity done for pay that involves performing significant physical or mental activity. 20 C.F.R. §§ 404.1572(a)-(b). The ALJ found that the plaintiff had not engaged in SGA since the alleged onset date of her disability, December 23, 2015. (R. 34).

Step two considers whether the plaintiff has a medically determinable impairment that is severe, or a combination of impairments that is severe as defined by the pertinent regulations. 20 C.F.R. § 404.1520 (c). A plaintiff who does not have an

impairment that is severe is not disabled.  If, however, the answer is yes, one moves to the next step.  Here, the ALJ found that the plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; piriformis syndrome/trochanteric bursitis; status post right wrist arthropathy; mild small airway obstruction; obstructive sleep apnea; depression; and anxiety disorder.  (R. 34).  The ALJ reached this conclusion after determining that the impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28."  (Id.).

Of note here, the ALJ did not find Valle's right knee issues to constitute a severe impairment.  The ALJ observed that while the record contained references to a knee MRI and a planned surgery, "the documented medical evidence does not contain any surgical notes or MRI."  (Id.).  The ALJ also cited examination notes finding only mild tenderness but normal gait, strength, and muscle tone.  "In light of the benign findings on diagnostic studies and physical examinations as well as the claimant's limited treatment history related to her alleged right knee condition," the ALJ found Valle's knee condition non-severe.  To be clear, the ALJ noted that Valle's medical RFC would take her knee problems into account.  (R. 34-35).

Step three considers whether the claimant's impairment or combination of impairments is of a severity to meet or medically

equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.   20 C.F.R. §§ 416.920(d), 416.925, and 416.926.   If so, the claimant is conclusively presumed to be disabled.  If not, one moves to step four.   Here, the ALJ found at step three that the plaintiff's impairments did not meet or medically equal the severity criteria of an impairment listed in the pertinent regulations.  (R. 35).  The ALJ accordingly moved to step four.

Step four considers the claimant's residual functional capacity (RFC) to work and entails a two-part inquiry.  First, the ALJ considers whether the claimant's RFC allows her to work at all, *i.e.*, whether she has the ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. § 416.920(f).  Second, the ALJ determines whether the applicant's RFC allows her to perform her past relevant work.  20 C.F.R. § 416.920(f).  If the claimant has the RFC to do her past relevant work, she is not disabled.  However, if the claimant is not able do any past relevant work, the analysis proceeds to the fifth and final step, which entails asking whether there are any jobs in the national economy the claimant is capable of performing.

The ALJ found at the first stage of this inquiry that the plaintiff had the RFC to perform light work, albeit with some limitations:

After careful consideration of the entire record, the undersigned finds that the claimant can speak and read English and is literate, but she may have some difficulty having more than simple communication in English or reading more detailed or complex English information. She has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for six hours out of an eight-hour workday and stand and/or walk for six hours out of an eight-hour workday. She can occasionally climb stairs and ramps but never climb ladders, ropes or scaffolds. She can occasionally balance, kneel, stoop, crouch, and crawl. She can occasionally use her right upper extremity for gross and fine manipulation and for pushing and pulling. She is right hand dominant. She would have to avoid concentrated exposures to unprotected heights, extremes in hot and cold temperatures, wetness, humidity, and pulmonary irritants such as dust, fumes, odors, and gases. She would be able to understand and carry out simple instructions consistent with an SVP of 2. She can maintain concentration, persistence, and pace for two-hour increments, over an eight-hour workday, and a 40-hour workweek. She can relate to coworkers, supervisors, and public on a superficial, interactional basis.

(R. 38). In reaching this determination, the ALJ found that, while the plaintiff's medically determinable impairments could reasonably be expected to cause the plaintiff's claimed symptoms, the plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence before him (R. 39). Concerning Valle's back pain in particular, the ALJ acknowledged that an MRI taken in September 2017 showed disc protrusions at L4-5 and stable disc bulges at L5-S1 and L3-4 with stenosis and contacting the nerve root at L3. However, Valle reported relief from injections and pain medication, and orthopedic examinations

12

showed intact sensation and strength.  She had also treated her
back through conservative measures, without the need for
hospitalization or surgery.  (R. 40-41).

Regarding Valle's mental impairments, the ALJ likewise found
that Valle's allegations were not entirely consistent with the
record and therapist documentation.  (R. 41-43).  Although she had
been under the regular care of a therapist since 2015, her
therapist's examination notes indicated consistently stable
orientation, memory, and attention.  She also was prescribed
medications for depression and anxiety, which practitioners
adjusted as necessary and which Valle found helpful.  While Valle
did report increased depression after the death of her mother in
late 2016, she reported only intermittent depression and
manageable anxiety in August 2017.  (R. 42-43).

The ALJ also gave little weight to the opinion of the
plaintiff's primary care physician, Dr. Ravindran, regarding
Valle's physical limitations.  The ALJ found Dr. Ravindran's report
"wholly inconsistent with the record as a whole, including the
relatively minor abnormalities on diagnostic studies and physical
examinations as well as the claimant's treatment history showing
improvement with treatment and her largely intact activities of
daily living."  (R. 44).  He also found the checkbox form she
submitted with little explanation to be of limited value.  (Id.).

The ALJ also placed little weight on the reports of Dr.

Barkalow (Valle's psychiatrist) and Dr. Powers (state psychological consultant). He noted that the record did not document a significant treatment history with Dr. Barkalow. Also, Dr. Barkalow's moderate global assessment of functioning (GAF) rating of 55 for Valle was not consistent with the significant limitations she cited. He also found Dr. Barkalow's opinion that Valle would be absent from work more than four days a month to be subjective. As for Dr. Powers, the ALJ found his GAF rating of 40-45 to also be inconsistent with the record and based on only a single evaluation. (R. 45).

In contrast, the ALJ gave great weight to the opinions of the State Disability Determination Service medical and psychological consultants.[2] He found their opinions consistent with the record, "including the relatively minor abnormalities on diagnostic studies, physical and mental status examinations, the claimant's treatment history showing improvement, and her largely intact activities of daily living . . . ." (R. 45). While acknowledging that the consultants' examinations were over a year old, "the evidence at the hearing level, including more recent physical examinations and psychiatric treatment notes, showed that the claimant's impairments have generally remained stable." (Id.).

The ALJ found at the second part of the step four inquiry

---

[2] The court presumes the ALJ refers here to psychologists Michelle Imber and Jane Metcalf.

14

that the plaintiff lacked the RFC to perform her past relevant work. (R. 46).

The ALJ therefore moved on to step five to consider whether the plaintiff was capable of performing any other work in the national economy given her RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. (R. 47). Based on the record and the vocational expert's testimony, the ALJ found that the plaintiff could perform the requirements of representative light unskilled occupations such as an usher or a counter clerk. He further found both occupations existing in significant numbers in the national economy. (Id.). The ALJ accordingly concluded that the plaintiff was not disabled. (R. 47-48).

## V.  STANDARD OF REVIEW

A court reviews the findings of an ALJ only to determine whether the findings are supported by substantial evidence, and whether the correct legal standard was applied. *Teague v. Colvin*, 151 F. Supp. 3d 1, 2 (D. Mass. 2015). Substantial evidence to support a decision exists if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Id*. This court must keep in mind that it is the role of the ALJ, and not this court, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence. *Ortiz v. Sec'y of Health & Human*

*Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).

This court may affirm, modify, or reverse the ALJ's decision, but reversal is warranted only if the ALJ made a legal or factual error in evaluating the plaintiff's claim, or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ. *Roman–Roman v. Comm'r of Soc. Sec.*, 114 F. App'x 410, 411 (1st Cir. 2004). This court therefore must affirm the ALJ's decision if it is supported by substantial weight, even if the record could arguably support a different conclusion. *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). "The ALJ's findings of fact, however, 'are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" *McCoy v. Colvin,* No. 14-cv-30188-KAR, 2015 WL 4602011, at *2 (D. Mass. July 31, 2015) (quoting *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999)). Thus, if the ALJ made a legal or factual error, the court may reverse or remand for consideration of new material evidence or to apply the correct legal standard. *See Manso-Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir. 1996); 42 U.S.C. § 405(g).

## VI.   ANALYSIS

The plaintiff contends that the ALJ erred in three ways. First, the ALJ erred at step two in failing to recognize Valle's knee issues as constituting a severe impairment. Second, the ALJ erred at step four in determining her RFC because he incorrectly

16

assessed both her physical and mental limitations. Finally, the ALJ erred at step five in determining there were jobs she could perform in the national economy. As discussed below, the court finds no basis to conclude that the ALJ committed reversible error.

### A. **Step Two Severe Impairment Determination**

Step two is understood to reflect a "de minimis policy" for determining whether a claimant has brought a claim with merit and "do[es] no more than screen out groundless claims." *McDonald v. Sec'y of Health and Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986); *see also* SSR 85-28, 1983-1991 Soc. Sec. Rep. Serv. 390 (Jan. 1, 1985) ("A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe. . . . Great care should be exercised in applying the not severe impairment concept."). A claimant has the burden of providing evidence to show that her impairment has more than a minimal effect on her ability to do basic work activities. *See Munoz v. Sec'y of Health & Human Servs.*, 788 F.2d 822, 823 (1st Cir. 1986); 20 C.F.R. §§ 404.1520(c), 416.920(c); SSR 85-28.

Valle contends that the ALJ erred in failing to recognize her knee ailments as constituting a severe impairment. Valle concedes that the record contains no surgical notes regarding her knee surgery, and she does not argue that the record reflects her knee MRI. She contends, though, that other evidence in the record

establishes that she had a torn right meniscus and that she received surgery to treat this tear. The Commissioner counters that there is no direct evidence of her meniscal tear. The Commissioner argues further that even if the ALJ erred in failing to consider Valle's meniscal tear, any error was harmless because Valle's knee condition was taken into account in her RFC assessment. The plaintiff is partially correct, but she is nonetheless not entitled to relief on this claim.

To begin, the ALJ noted, and Valle did not dispute, that while the record "references knee MRI with plan for surgery based on the claimant's reports . . . the documented medical evidence does not contain any surgical notes or MRI." (R. 34). In fact, the record does contain an MRI report on Valle dated December 30, 2016, with an impression from Dr. Babington Yung, M.D., that an "[o]blique horizontal tear posterior horn of right medial meniscus is seen." (R. 378-79). However, no harm flowed from the ALJ's failure to specifically acknowledge this report, for at least three reasons.

First, the MRI report itself contributes little of substance. It is the sole report documenting an actual tear and is unaccompanied by any other reports from a pertinent medical specialist such as an orthopedic surgeon. In that regard, the record is bare and does not contain any assessment of the severity of the tear, the pain it could be expected to cause, the recommended course of treatment, or the prognosis.

18

Second, notwithstanding the absence of surgical records, the ALJ nonetheless reviewed the relevant evidence in the record concerning Valle's knee that spanned from shortly before to after her surgery date. (R. 34). This included a November 2016 knee examination showing only mild right knee tenderness and swelling but full strength and normal muscle tone (R. 1042-43); a November 30, 2016 examination noting normal gait (R. 1040); Valle's physical therapy for her knee in July and August 2017 (R. 1382-1388); and a normal knee x-ray in September 2017 (R. 1378). The ALJ also asked Valle about her knee. While Valle testified at one point that she had pain despite her surgery, she stated at another that her medication relieved her pain by 80 percent. (R. 91, 88). In context, then, this court cannot readily conclude that the ALJ failed to adequately consider the extent of Valle's knee ailments, and finds in any event that the evidence in the record was rationally adequate to support the ALJ's finding of a non-severe knee impairment.

Third, even assuming *arguendo* the evidence was sufficient to support such a finding, any error in not so finding would be demonstrably harmless here. Once there is a step two finding of *any* severe impairment an ALJ must "consider the limiting effects of *all* [the claimant's] impairment(s), even those that are not severe," in determining the claimant's RFC. 20 C.F.R. § 404.1545 (emphasis added); *see also Viveiros v. Astrue*, No. 10-11902-DJC,

2012 WL 4104794, at *9 n.4 (D. Mass. Sept. 19, 2012). "[A]s long as the ALJ finds at least one severe impairment so that the sequential evaluation progress[es] to the next step, an error at Step Two does not require reversal." *Dunham v. Astrue*, No. 10-cv-40246-TSH, 2013 WL 1192406, at *8 (D. Mass. Mar. 21, 2013); *see also Perry v. Astrue*, No. 11-40215-TSH, 2014 WL 4965910, at *4 (D. Mass. Sept. 30, 2014) ("Here, any error at step two was harmless because the evaluation proceeded past step two and the [AC] considered all of the Plaintiff's impairments at step four.").

That is what happened here. Although the ALJ did not find Valle's knee to constitute a severe impairment, he found that she did suffer from a number of other severe impairments and therefore went on to consider all of the impairment evidence in determining Valle's RFC, including evidence relating to her knee. (R. 35). Valle therefore is not entitled to relief on this claim.

### B. Step Four RFC Determination

As noted above, the ALJ determined at step four that Valle retained the RFC to perform "light exertional level work" but was not able to perform any past relevant work (as a cashier, housekeeper, home health aide, sales attendant or customer service representative). (R. 46). Valle assigns two errors to the ALJ's determination. First, the ALJ improperly assessed her mental RFC by failing to consider the limitations assessed by two state agency psychological consultants. Second, the ALJ improperly assessed

her physical RFC because he relied on the opinions of medical consultants who had not reviewed later-submitted material evidence.  Neither argument persuades.

1. <u>Mental RFC Assessment</u>

With respect to the determination of Valle's mental RFC, the ALJ concluded among other things that Valle could "maintain concentration, persistence, and pace for two-hour increments" and could "relate to coworkers, supervisors, and the public on a superficial, interactional basis."  (R. 38).  Valle does not challenge the ALJ's reliance on the reports of the state psychologists but contends that their reports also contained statements of certain limitations which the ALJ erroneously dismissed or ignored.  These included findings that Valle would have occasional interruptions from intrusive memories of trauma and that she would have difficulty engaging with others outside of a low-conflict setting.  Valle also contends that the state psychologists used vague terminology to describe her limitations and that the ALJ erred by not relying on the opinion of her treating psychiatrist, Dr. Barkalow, for a more precise statement.

The Commissioner counters that the state psychologists found that, despite the limitations Valle cites, the record reflected that she could still understand and remember simple instructions, concentrate and focus on simple tasks, engage in routine social interaction, and adapt to simple changes.  The Commissioner argues

in any event that there is no tension between a psychologist's finding on the one hand that she could engage in routine social interaction in low-conflict settings, and the ALJ's finding on the other that she could interact with interact with coworkers, supervisors, and the public on a superficial basis.

This court discerns no error in the ALJ's assessment of the plaintiff's mental RFC. As a threshold matter, the record reflects that the ALJ satisfied his obligation to review all the pertinent evidence in the record, including records reflecting the plaintiff's mental health treatment from before her alleged December 2015 onset date through 2017. The ALJ acknowledged from this review that Valle suffered from depression, had received psychological treatment predating her alleged onset date, and had also regularly attended counseling and medication managements sessions in 2015.

As the ALJ further noted, though, the records from South Bay Mental Health indicated that since the alleged onset date, the plaintiff had experienced generally stable examinations, admitted that she had stopped Sertraline and Klonopin on her own (even though she also admitted feeling more anxious and depressed), displayed adequate grooming, intact thoughts, engaged attention/concentration, good memory, and showed no abnormal movements. The ALJ also noted evidence from Valle's treating therapist, Euclides Gibau, M.Ed., and others reflecting that

22

Valle's condition remained relatively stable throughout 2016 and into 2017 and that her "mood/affect, thought process/orientation, and behavior function remained stable" even though she at times reported variable levels of depression and anxiety. (R. 42). Based on the foregoing, the ALJ found that the evidence did not support Valle's allegations of disabling impairments but rather reflected "a history of only mild to moderate symptoms with generally effective treatment." (R. 43).

The ALJ further noted that the record reflected no evidence of psychiatric hospitalization or episodes of decompensation and instead showed that Valle had been able to "somewhat successfully" treat her symptoms through therapy sessions and medication. Further, although the ALJ noted that Valle's mental status examinations at times showed abnormal mood or affect, they were overall "benign" and consistently documented "unremarkable speech, thoughts, orientation and cognition." (R. 43).

Finally, the ALJ noted that Valle, despite her impairments, showed that she was capable of caring for her daughter, participating in light household chores, shopping for groceries with her adult daughter, socializing regularly, and visiting family in Puerto Rico twice since 2016. The ALJ found from the entire record that Valle had "some limitations due to her impairments" but that the evidence in the record did not support "the degree of symptomology and functional limitations" she

23

alleged.  (R. 41-43).

Against this backdrop, this court cannot readily agree that the ALJ failed, even if only implicitly, to consider and credit opinions that Valle would have occasional interruptions from intrusive memories of trauma and would have difficulty engaging with others outside of a low-conflict setting.  If anything, it appears that the ALJ noted that there was evidence showing that Valle did indeed suffer from mental impairments of this sort but went on to find that they did not result in limitations to the degree she contends.  More fundamentally, even if the ALJ failed to fully appreciate these opinions, that would not warrant remand here because the court finds from the foregoing summary of the ALJ's considerations on this issue that the record as a whole supported the ALJ's mental RFC and the statements at issue would thus not call the reasonableness of the ALJ's assessment into question.

To be sure, Valle argues that the terms "occasional" and "low-conflict" as used by the consultants were vague and that the ALJ therefore should have turned to the report of Dr. Barkalow for a more precise analysis of Valle's mental limitations, a report she contends supports her claim of a more severe limitations.  The court rejects this argument.  An ALJ is permitted to render a common-sense judgment about a claimant's mental RFC based on medical findings as long as he does not "overstep the bounds of a

lay person's competence and render a medical judgment." *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990).  In this case the ALJ thoroughly considered the mental health evidence, including records of Valle's regular therapist, Ms. Gibau (R. 455-560), and concluded that "it reflects a history of only mild to moderate symptoms with generally effective treatment." (R. 42-43).  He also explained that he did not give weight to Dr. Barkalow's report because she did not appear to have treated Valle for any length of time, and the report moreover conflicted with the treatment notes and Valle's ability to perform many tasks of daily living.  As such, it was not error for the ALJ to make a common-sense determination that "occasional" and "low-conflict" issues would not preclude Valle from competitive work. *See Guzman v. Coleman*, No. 15-cv-230-PB, 2016 WL 1275036, at *3-4 (D.N.H. Apr. 1, 2016) (where medical opinion said that claimant could generally interact and communicate appropriately and politely and adequately manage low to moderate levels of stress and change, ALJ did not err in making a common-sense determination that the claimant could work in a low-stress job with only occasional interaction with the public and co-workers).

   2. Physical RFC Assessment

   Valle argues that the ALJ erred in determining her physical RFC because he relied on the reports of state physicians who had no knowledge of her torn meniscus or a lumbar spine MRI performed

in September 2017.  Valle argues that the ALJ should have relied instead upon the opinion of Dr. Ravindran, who had treated Valle for approximately five years.  Dr. Ravindran reported that Valle could stand or walk for less than two hours per day and sit less than six hours per day, which would preclude her from full-time work.  She also opined that Valle "could perform less than sedentary work with additional limitations of pushing and/or pulling." (R. 44).

The Commissioner counters that the state agency physicians had a substantial record before them and that the ALJ in addition considered over 100 pages of medical records generated after Valle's second state examination in January 2017.  The Commissioner argues further that the ALJ specifically considered Valle's most recent spine MRI, and properly discounted Dr. Ravindran's report because it was inconsistent with the record as a whole.

For disability claims filed prior to March 27, 2017, as this one was, opinions from treating physicians are ordinarily given greater weight than opinions from non-treating sources.  20 C.F.R. § 404.1527(c)(2); *Bourinot v. Colvin*, 95 F. Supp. 3d 161, 175 (D. Mass. 2015).  However, an ALJ may discount the weight of a treating source opinion if it is inconsistent with other substantial evidence in the record, including treatment notes and evaluations by examining or non-examining physicians.  *Arruda v. Barnhart*, 314 F. Supp. 2d 52, 72 (D. Mass. 2004).  Still, if an ALJ does not

give a treating physician's opinion controlling weight, the ALJ must explain both the weight given and the reasons supporting that decision. *Bourinot*, 95 F. Supp. 3d at 176.

Applying those principles here, the court cannot find that the ALJ erred in determining Valle's physical RFC. The ALJ recognized that Dr. Ravindran was Valle's primary care physician but also explained why he nonetheless discounted her opinion. He explained that he gave it "little weight" because he found it "wholly inconsistent" with the record, which included "relatively minor abnormalities on diagnostic studies and physical examinations as well as the claimant's treatment history showing improvement with treatment and her largely intact activities of daily living." (R. 44).

More particularly, the ALJ specifically explained that he gave little weight to a 2016 report which in fact "did not show any abnormalities" because the assessment was done in a checkbox format with "little explanation", thus "reducing its evidentiary value". The ALJ also gave little weight to an August 2017 letter confirming treatment of Valle for several "conditions like fibromyalgia, wrist, knee and back osteoarthritis, and COPD" because Dr. Ravindran did not assess any functional limitations in the letter. The ALJ also explained that he discounted Dr. Ravindran's certification that Valle could not walk 200 feet without stopping to rest, because this assessment had been

27

completed for purposes of a disabled parking permit.  (Id.).  The record thus shows that the ALJ recognized Dr. Ravindran as a treating source but also explained why and to what extent he chose to discount her findings or opinions.

Having discounted Dr. Ravindran's opinion, however, it does not follow that the ALJ could automatically rely on the reports of the state medical consultants to determine Valle's physical RFC. The opinion of a state agency consultant cannot serve as substantial evidence if it is based "'on a significantly incomplete record.'" *Roshi v. Comm'r*, 14-cv-10705-JGD, 2015 WL 6454798, at *12 (D. Mass. Oct. 26, 2015) (quoting *Alcantara v. Astrue*, 257 F. App'x 333, 334 (1st Cir. 2007)).  However, if the information in the evidence the consultant considers remains accurate, an ALJ may rely on the consultant's opinion notwithstanding that new evidence has since been submitted.  *See Abubakar v. Astrue*, No. 11-cv-10456-DJC, 2012 WL 957623, at *12 (D. Mass. Mar. 21, 2012).

Here, the court cannot conclude that the record before the state medical consultants was "significantly incomplete". Regarding Valle's back issues, the only real piece of evidence the medical consultants did not review was Valle's September 2017 spine MRI, which did reveal a new disc protrusion at L4-L5.  (R. 1376). However, this protrusion showed no evidence of stenosis, and her other disc levels were stable or unchanged.  (Id.).  Thus, this MRI did not impact the substantial evidence the medical consultants

considered.   Further, the ALJ was entitled to make common sense judgments about Valle's treatment records throughout 2017 that showed generally normal findings, including an examination just a month before the MRI that found intact strength and sensation. (R. 1331).   *Gordils*, 921 F.2d at 329.

As for Valle's knee, the record indicates that the state medical consultant for Valle's reconsideration had a copy of her knee MRI.   (R. 146).   Although Valle informed the state consultant that "walking was difficult due to severe pain," there is no indication that Valle reported knee pain as a new physical condition or clarified where she specifically felt pain when walking.   (R. 145).   Further, as the ALJ observed, the record simply does not contain a lengthy or detailed history of Valle's knee treatment.   Consequently, there is no basis to conclude that the record before the state consultants regarding Valle's knee was "significantly incomplete," particularly where little evidence of her knee impairment was submitted after her reconsideration.

In sum, the court finds on this record that the ALJ did not err at step four in determining Valle's RFC.

### C. Step Five Determination

The ALJ determined at step five that there were jobs in the national economy that the plaintiff could perform.   In so finding, the ALJ relied in part upon the testimony of a vocational expert who determined that someone with Valle's limitations and

background would be able to perform "light, unskilled" occupations such as usher or counter clerk.   Valle argues that this determination was flawed in two ways.

First, assuming the ALJ erred in determining Valle's RFC at step four, it means that the vocational expert's testimony was necessarily based on inaccurate information and could not be relied upon for a step five determination.   *See e.g., Arocho v. Sec'y of Health & Human Servs.,* 670 F.2d 374, 375 (1st Cir. 1982).   The court rejects this argument without further discussion where it has concluded that the ALJ did not err at step four in determining the plaintiff's RFC.

Second, Valle correctly notes that the vocational expert initially opined that Valle could also perform the occupation of furniture rental consultant, but then eliminated that occupation from consideration because of the required level of language skills and interaction.   Valle argues that the occupations of usher and counter clerk require the same skills and therefore should also have been removed from consideration, resulting in a finding of disability on the ground that there are no occupations the plaintiff is capable of performing.

However, the court agrees with the Commissioner that the ALJ did not err in concluding that Valle had the requisite language and interpersonal skills to serve as an usher or counter clerk, notwithstanding that she could not serve as a furniture rental

consultant.  As noted by the Commissioner, the job description for a furniture rental consultant requires speaking and interacting with customers in no less than seven capacities, including providing advice and explanations.  By contrast, a counter clerk for photo processing and an usher are required to speak far less frequently and on far less varied topics.  Moreover, the position of usher requires only Level 1 language skills.  In short, there was a legitimate basis to exclude the occupation of furniture rental consultant from consideration and doing so did not require that one do the same with respect to the occupations of usher and counter clerk.  The ALJ therefore did not err in incorporating the vocational expert's testimony.

## VII. CONCLUSION

For the reasons stated above, the plaintiff's Motion to Reverse (D. 16) should be **DENIED** and the Commissioner's Motion to Affirm the Commissioner's Decisions (D. 19) should be **GRANTED**.[3]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  March 2, 2020

---

[3] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).